FOR PUBLICATION

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| PEOPLE OF THE VIRGIN ISLANDS, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Criminal No. 2009-09 |
| | ) | re: Super. Ct. Crim. No. F20/09 |
| WILLIAM G. CLARKE, | ) ) | |
| Defendant. | ) ) | |

ATTORNEYS:

**Brenda Scales, Esq.**
St. Thomas, U.S.V.I.
      *For the plaintiff,*

**Kerry E. Drue, Esq.**
St. Thomas, U.S.V.I.
      *For the defendant.*

## MEMORANDUM OPINION

GÓMEZ, C.J.

        Before the Court is the motion of the People of the Virgin
Islands (the "Government") to remand the above-captioned matter
to the Superior Court of the Virgin Islands, Division of St.
Thomas and St. John (the "Superior Court").

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 2

## I.  __FACTS__[1]

On the morning of September 7, 2008, Defendant William G. Clarke ("Clarke"), a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, observed Marguerite Duncan ("Duncan") and Marcus Sukow ("Sukow") arguing loudly outside of Clarke's condominium at the Mahogany Run Condominium complex, in St. Thomas, U.S. Virgin Islands.  Duncan and Sukow had been drinking.  At some point during their argument, Duncan left her condominium, got into her vehicle, and attempted to reverse out of her parking space.  Clarke was leaving his condominium and walking toward his vehicle when he saw Sukow yelling at Duncan. Clarke asked Sukow and Duncan if everything was alright. Thereafter, Sukow retrieved a steel flashlight, approximately twelve inches in length, from his car.  Sukow struck the hood of Duncan's vehicle with the flashlight.  Sukow then stood in the middle of the street, preventing Duncan from driving away. Thereafter, Duncan asked Clarke for a ride.  While Sukow was distracted by a neighbor, Duncan got out of her vehicle and got into Clarke's vehicle.  A security guard heard Sukow ask Clarke to let Duncan out of the vehicle.  Duncan heard Clarke say, "Marcus buddy go inside."  Sukow approached Clarke and Duncan, who were seated in Clarke's vehicle.  Sukow then struck Clarke's

---

[1]  The parties have stipulated to the facts set forth below.

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 3

car with the flashlight.  Clarke thereafter shot and killed Sukow.

On January 13, 2009, the Government filed a four-count information against Clarke in the Superior Court.  Count One of the information charges Clarke with second degree murder for Sukow's death, in violation of title 14, sections 921 and 922 of the Virgin Islands Code ("Section 921" and "Section 922").  Count Two charges Clarke with using a dangerous weapon during the commission of a second degree murder, in violation of title 14, section 2251(a)(2)(B) of the Virgin Islands Code ("Section 2251(a)(2)(B)").  Count Three charges Clarke with committing voluntary manslaughter, in violation of title 14, section 924 of the Virgin Islands Code ("Section 924").  Count Four charges Clarke with using a dangerous weapon during the commission of a voluntary manslaughter, in violation of Section 2251(a)(2)(B).

On January 15, 2009, Clarke was arraigned on the charges in the information in the Superior Court.

On February 13, 2009, Clarke filed a notice of removal of the matter to this Court, along with a supporting memorandum of law.  On March 13, 2009, the Government filed an opposition to the notice of removal, along with a motion to remand the matter to the Superior Court.  Clarke timely opposed the motion to remand.

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 4

An evidentiary hearing on the motion to remand was conducted on April 1, 2009, in accordance with 28 U.S.C. § 1446(c)(5).[2]

## II.  ANALYSIS

At the outset, the Court notes that this case presents a unique issue in the context of removal of criminal prosecutions – one which is not easily resolved.  Indeed, there is not a wealth of cases involving similar circumstances to those presented in the case at bar.

Clarke has removed this matter pursuant 28 U.S.C. § 1442(a)(1) ("Section 1442(a)(1)"), which provides:

> A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
>> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any

---

[2]  Pursuant to Section 1446(c)(5), when a notice of removal has been filed in a criminal prosecution,

> [i]f the United States district court does not order the summary remand of such prosecution, it shall order an evidentiary hearing to be held promptly and after such hearing shall make such disposition of the prosecution as justice shall require.  If the United States district court determines that removal shall be permitted, it shall so notify the State court in which prosecution is pending, which shall proceed no further.

28 U.S.C. § 1446(c)(5).

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 5

> agency thereof, sued in an official or
> individual capacity for any act under color
> of such office or on account of any right,
> title or authority claimed under any Act of
> Congress for the apprehension or punishment
> of criminals or the collection of the
> revenue.

28 U.S.C. § 1442(a)(1).[3]

To show that removal jurisdiction is appropriate under
Section 1442(a)(1), a defendant must establish that: (1) he is a
"person" within the meaning of the statute; (2) he acted under
color of federal office, and there is a causal nexus between the
charges against him and the acts performed under color of federal
office; and (3) he raises a colorable federal defense. *See Feidt
v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir.
1998) (citing *Mesa v. California*, 489 U.S. 121, 129, 109 S.Ct.
959, 965, 103 L.Ed.2d 99 (1989); and *Willingham v. Morgan*, 395
U.S. 402, 409, 89 S.Ct. 1813, 1817, 23 L.Ed.2d 396 (1969)).  The
Supreme Court of the United States has explained that "the right
of removal is absolute for conduct performed under color of
federal office, and has insisted that the policy favoring removal
'should not be frustrated by a narrow, grudging interpretation of
[Section] 1442(a)(1).'" *Arizona v. Manypenny,* 451 U.S. 232, 242,

---

[3] "[T]his Court is a 'district court' as that term is used
in the federal removal statutes [such as Section 1442], and,
correlatively, the [Superior] Court is a 'state court' for
purposes of removal." *Paradise Motors, Inc. v. Murphy*, 892 F.
Supp. 703, 707 (D.V.I. 1994).

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 6

101 S.Ct. 1657, 68 L.Ed.2d 58 (1981) (quoting *Willingham v. Morgan*, 395 U.S. at 409).

The Government does not dispute that Clarke, as an ATF special agent, is a "person" within the meaning of Section 1442(a)(1).[4]  Rather, the Government argues that Clarke was not acting under color of federal office, and has not raised a colorable federal defense.

**1.    Under Color of Federal Office**

In order to remain in federal court, Clarke must establish that the act complained of – the shooting and killing of Sukow with a gun on September 7, 2008 – was done under color of federal office. *See* 28 U.S.C. § 1442(a)(1).  The color of office test has repeatedly been interpreted to require a "causal connection between the charged conduct and asserted official authority." *Com. of Pa. v. Newcomer,* 618 F.2d 246, 249 (3d Cir. 1980) (quotation omitted).  To satisfy this requirement, the defendant must show that the prosecution arises out of the acts done by him under color of federal authority. *See Maryland v. Soper,* (No. 1), 270 U.S. 9, 33, 46 S.Ct. 185, 189, 70 L.Ed. 449 (1926).  Section 1442(a)(1) "does not require that the prosecution must be for the

---

[4]   The Government conceded that Clarke was a "person" within the meaning of Section 1442(a)(1) during the April 1, 2009, hearing, as well as in its motion to remand. *See* (Mot. to Remand 1, Feb, 2, 2009.)

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 7

very acts which the officer admits to have been done by him under federal authority." *Id.* at 33.  Rather, "[i]t is enough that [the defendant's] acts or presence at the place in performance of his official duty constitute the basis, though mistaken or false, of the state prosecution." *Id.*

Black's Law Dictionary defines acts taken under "color of office" as acts that are "vested with, or appear to be vested with, the authority entrusted to that office." Black's Law Dictionary (8th ed. 2004).  Indeed, as the Supreme Court has explained, the term "'color of office,' . . . suggests a kind of holding out and means appearance, semblance, or simulacrum, but not necessarily the reality." *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 211, 90 S.Ct. 1598, 1630-31 (1970) (quotation omitted). Thus, an act performed by a federal officer may be considered to be "under color of office" so long as the officer acted under the guise of his official authority, even if he did not actually have the authority to perform the act in question. *See id.; see also Maryland Cas. Co. v. McCormack*, 488 S.W.2d 347, 352 (Ky. 1972) ("An act under color of office is an act of an officer who claims authority to do the act by reason of his office when the office does not confer upon him any such authority."); *Pontiac Trust Co. v. Newell*, 254 N.W. 178, 181 (Mi. 1934) ("Color of office is a pretense of official right to do an act made by one who has no

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 8

such right; a claim or assumption of right to do an act by virtue

of an office made by a person who is legally destitute of any

such right.").

Clarke argues that the shooting was performed under color of

federal office because it was within his authority as an ATF

agent to intervene when he witnessed the dispute between Sukow

and Duncan.  He points to 18 U.S.C. § 3051,[5] which authorizes ATF

agents to carry firearms and to make warrantless arrests for

federal crimes.

At the April 1, 2009, removal hearing, Clarke indicated to

the Court an inclination to proceed without putting on any

evidence.  At the beginning of the hearing, the Court engaged in

the following exchange with the defense attorney:

---

[5]   The statute provides:

>     Special agents of the Bureau of Alcohol, Tobacco,
>     Firearms, and Explosives, as well as any other
>     investigator or officer charged by the Attorney
>     General with the duty of enforcing any of the
>     criminal, seizure, or forfeiture provisions of
>     the laws of the United States, may carry
>     firearms, serve warrants and subpoenas issued
>     under the authority of the United States and make
>     arrests without warrant for any offense against
>     the United States committed in their presence, or
>     for any felony cognizable under the laws of the
>     United States if they have reasonable grounds to
>     believe that the person to be arrested has
>     committed or is committing such felony.

18 U.S.C. § 3051.

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 9

> THE COURT: All right. This is a 1442 matter.
> Does counsel have a position on burden and
> procedure?
>
>                    . . .
>
> [DEFENSE ATTORNEY]: . . . .  It's our position
> that in terms of where we are at this point, and
> what we should be doing, we do not believe, for
> example, that an evidentiary hearing is
> necessary. . . .
>
>                    . . .
>
> THE COURT: Just, procedurally, your position
> is that no evidentiary hearing is required, and,
> at  most, just a hearing –
>
> [DEFENSE ATTORNEY]: Absolutely.
>
> THE COURT: -- on the papers.
>
> [DEFENSE ATTORNEY]: Absolutely.

(Hr'g Tr. 5-6, Apr. 1, 2009.)

During the hearing, the Court made repeated efforts to

remind Clarke of the need to satisfy his burden of proof as to

removal.  For instance, the Court asked the defense attorney:

> THE COURT: . . . . [D]o you wish to present any
> evidence at this hearing?
>
> [DEFENSE ATTORNEY]: We don't. . . .
>
> THE COURT: All right. Well, then, let me ask you
> about 28 USC [§] 1446(c). Tell me if that section
> requires an evidentiary hearing.  And I guess I'm
> reading one section of it that says that . . . it
> suggests that, (c)(5), that:
>
> > . . . if the United States District Court
> > does not order the summary remand of such

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 10

> prosecution, it shall order an evidentiary
> hearing to be held promptly.
>
> [DEFENSE ATTORNEY]: Yes.
>
> THE COURT: So it seems that if the government
> doesn't prevail, at least in the first instance,
> and get a summary remand, then does the statute
> not require that you place some evidence on the
> record?

(*Id.* at 11.)   Shortly thereafter, the Court again stated:

> THE COURT: . . . . [A]s I understand it, I think
> there's no disagreement that at least if there
> isn't a summary remand, the burden would seem to
> be on the defendant.  I don't think there's any
> dispute about that.
>
> [DEFENSE ATTORNEY]: I think that's correct --
>
> THE COURT: All right. And so to the extent that's
> the case, and to the extent the language in the
> statute, "shall hold an evidentiary hearing," is
> mandatory language, and not permissive language,
> I'm just wondering if, with an abundance of
> caution, the defense wouldn't want to present
> this matter, you know, present some evidence, so
> that the record could be very clear.

(*Id.* at 13.)

Eventually, Clarke called one witness to the stand: Agent
Ari Shapira, the ATF resident agent in charge of violent crimes.
Agent Shapira stated that according to ATF policy, special agents
are expected to be armed at all times in order to protect the
public in the event of a threat.  Indeed, the ATF Use of Force
and Weapons Policy, ATF O 3020.1 (the "Weapons Policy"), entered
into evidence at the hearing, states:

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 11

> Special agents are considered available for duty
> 24 hours a day, 7 days a week in a standby or on-
> call status.  For this reason, special agents
> will be armed at all times while on duty.  Leave
> status does not suspend special agents' authority
> to carry firearms.  Accordingly, special agents
> are authorized to be armed at all times, and
> expected to protect themselves and the public
> subject to the rules in this chapter.

ATF O 3020.1, Ch. C, § 31(b) (Dec. 8, 2005).

Furthermore, the ATF Investigative Priorities, Procedures

and Techniques, ATF O 3210.7C (the "Investigative Procedures"),

also entered into evidence at the hearing, provides:

> A special agent may witness a State violation,
> either on or off duty.  Although no specific
> Federal authority exists allowing federal agents
> to make arrests for other than Federal
> violations, the Bureau takes the position that
> special agents are not totally without authority
> or responsibility in this area.  Bureau special
> agents may intervene in exigent State offenses
> under the authority vested in them by State law
> either as statutorily recognized peace officers
> or as private citizens. . . .[6]

---

[6]  The Investigative Procedures also warns that

> Special agents should be aware that certain
> potential risks exist when they act in the
> capacity of a private citizen with regard to
> civil lawsuits and any rendered pecuniary
> judgment.  Special agents shall not arrest or
> detain individuals for traffic or other minor
> violations unless compelling circumstances exist
> causing them to believe that injury or death to
> others would be likely if action were not
> immediately taken. . . .

ATF O 3210.7C, Ch. E, § 55(a) (Feb. 25, 1999).

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 12

ATF O 3210.7C, Ch. E, § 55(a) (Feb. 25, 1999).[7]

In light of these policies, Clarke argues that the shooting was undertaken under color of federal office.  The evidence in the record on which he relies for support is remarkably sparse. Against this backdrop, the Court must determine whether the evidence presented in this case is sufficient to support removal.

In *Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969), the Supreme Court addressed the issue of the evidence required to support removal under Section 1442(a)(1). In that case, a federal inmate sued two prison officials in state court, alleging that they inoculated him, then assaulted and tortured him.  The defendants removed the case under Section 1442(a)(1), and the district court upheld the removal.  The United States Court of Appeals for the Tenth Circuit reversed, holding that Section 1442(a)(1) permits removal only where the

---

[7]  Additionally, Clarke has submitted a declaration of Eduardo M. Halley ("Halley"), an ATF supervisory special agent assigned to the office with authority over the Virgin Islands. In his declaration, Halley avers that, after the shooting,

> [t]he ATF investigative team concluded that Special Agent Clarke acted with prudence and restraint, only resorted to the use of deadly force in response to an imminent and deadly threat to his safety and the safety of others, and acted in compliance with the established policies of the United States Department of Justice.

(Ex. A. to Mot. in Support of Removal, Halley Decl. 2 ¶ 5, Feb. 20, 2009.)

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 13

defendant "exclude[s] the possibility that the suit is based on acts or conduct not justified by his federal duty." *Morgan v. Willingham*, 383 F.2d 139, 141 (1967).  The court noted that "[t]he only undisputed evidence was that the only contact the appellees had with the appellant occurred within the walls of the penitentiary." *Id.* at 141-42.  Based on its reading of Section 1442(a)(1), the Tenth Circuit found such evidence to be insufficient to support removal.

The Supreme Court rejected the Tenth Circuit's narrow reading of Section 1442(a)(1). *See Willingham*, 395 U.S. at 407 (holding that "[t]he federal officer removal statute is not 'narrow' or 'limited'") (quotation omitted).  The Supreme Court explained that

> [t]he position of the court below would have the anomalous result of allowing removal only when the officers had a clearly sustainable defense. The suit would be removed only to be dismissed. Congress certainly meant more than this when it chose the words 'under color of * * * office.' In fact, one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.

*Id.*  The Court further noted that, "[i]f the question raised is whether they were engaged in some kind of 'frolic of their own' in relation to respondent, then they should have the opportunity to present their version of the facts to a federal, not a state, court.  This is exactly what the removal statute was designed to

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 14

accomplish." *Id.* at 409.  In light of this broad reading of

Section 1442(a)(1), the Supreme Court found that the evidence in

the record was sufficient to support removal. *See id.* at 409-10.

Significantly, however, *Willingham* was a civil case.  In

addressing the showing required to support removal under Section

1442(a)(1), the *Willingham* Court noted that, "[w]ere this a

criminal case, a more detailed showing might be necessary because

of the more compelling interest in conducting criminal trials in

the state courts." *Id.* at 409 n.4.  In making this distinction,

the Court cited to the criminal cases of *Maryland v. Soper,* (No.

1), 270 U.S. 9, 46 S.Ct. 185, 189, 70 L.Ed. 449 (1926), and

*Colorado v. Symes*, 286 U.S. 510, 52 S.Ct. 635, 76 L.Ed. 1253

(1932).

In *Maryland v. Soper*, federal prohibition agents were

indicted for murder in Maryland state court.  The agents filed a

petition for removal to federal district court, asserting that

the acts for which they were charged, "which charge they all

denied, were done in the discharge of their official duties as

prohibition agents, and as officers of the internal revenue in

the discharge of their duty." *See Soper*, 270 U.S. at 22.  The

district court entered an order of removal.  The state of

Maryland moved to rescind the order.  The defendants moved for,

and obtained, leave to amend their removal petition.   The amended

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 15

petition contained far more detail than the original.  In the
amended petition, the agents averred that, on the night in
question, they had been directed to investigate "the alleged
unlawful production of intoxicating liquor on a farm[.]" *Id.* at
23.  The agents encountered a number of men carrying a still, at
which time the men dropped the still and fled.  After
unsuccessfully pursuing the still operators, the agents destroyed
the still.  On the way back to their car, the agents came across
a fatally wounded and dying man. *See id.* at 23-24.  The district
court granted the amended petition, finding that removal was
appropriate.  The State of Maryland petitioned the Supreme Court
for a writ of mandamus requiring the district court judge to
remand the case to state court, arguing that the amended petition
set forth insufficient facts to entitle the defendants to
removal.

Specifically, the defendants "[did] not negative the possibility

The Supreme Court granted the state's petition for a writ of
mandamus.  It rejected the defendants' amended petition for
removal because the averments therein were "not sufficiently
informing and specific to make a case for removal," *id*. at 34, as
they amounted "to hardly more than to say that the homicide on
account of which they are charged with murder was at a time when
they were engaged in performing their official duties." *Id*.
Specifically, the defendants "[did] not negative the possibility

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 16

that they were doing other acts than official acts at the time

and on this occasion, or make it clear and specific that whatever

was done by them leading to the prosecution was done under color

of their federal official duty." *Id.* at 35.

The Supreme Court in *Soper* rejected the state's contention

that a federal officer can remove a criminal prosecution only "by

admitting that he did the act for which he is prosecuted." *Id.* at

32. Rather, the Court enunciated the following test:

> There must be causal connection between what the
> officer has done under asserted official
> authority and the state prosecution. It must
> appear that the prosecution of him for whatever
> offense has arisen out of the acts done by him
> under color of federal authority and in
> enforcement of federal law, *and he must by direct
> averment exclude the possibility that it was
> based on acts or conduct of his, not justified by
> his federal duty*. But the statute does not
> require that the prosecution must be for the very
> acts which the officer admits to have been done
> by him under federal authority.  It is enough
> that his acts or his presence at the place in
> performance of his official duty constitute the
> basis, though mistaken or false, of the state
> prosecution.

*Id.* at 33 (emphasis supplied).

At the same time, the Court explained that, "[i]n invoking

the protection of a trial of a state offense in a federal court .

. ., a federal officer abandons his right to refuse to testify

because accused of crime, at least to the extent of disclosing in

his application for removal all the circumstances known to him

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 17

out of which the prosecution arose." *Id.* at 34.  The *Soper* Court

further explained that, "[i]n order to justify so exceptional a

procedure [as removal of a criminal prosecution], the person

seeking the benefit of it should be candid, specific and positive

in explaining his relation to the transaction growing out of

which he has been indicted, and in showing that his relation to

it was confined to his acts as an officer." *Id.* at 35.

Here, however, Clarke declined to take the stand at the

removal hearing and testify as to his knowledge of the events

that occurred on September 7, 2008.  During the April 1, 2009,

hearing, the defense attorney stated:

> And I think Your Honor may understand. I'll be
> frank with the Court. My client is here today. I
> don't want to put my client on the witness stand
> to establish, you know, if I don't have to.

(Hr'g Tr. 89, Apr. 1, 2009.)  While the Court appreciates

Clarke's desire not to incriminate himself, it notes that Clarke

could have testified at the removal hearing for the limited

purpose of determining the removal question, without prejudice to

his case at trial, as is often done in the context of suppression

hearings. *See Simmons v. United States,* 390 U.S. 377, 390- 88

S.Ct. 967, 19 L.Ed.2d 1247 (1968) (holding that testimony given

by a defendant in support of a motion to suppress cannot be

admitted as evidence of his guilt at trial).  Clarke has also not

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 18

offered any other evidence regarding the details of the events in question to enable the Court to determine whether the shooting of Sukow occurred under the guise of Clarke's federal authority. Instead, Clarke has offered a single-paragraph stipulation, roughly outlining the events that occurred on the morning of the shooting.  Like the agents in *Soper,* Clarke has not been "candid, specific and positive" in his explanation of the circumstances out of which the instant prosecution arose. *See id.*

The Supreme Court again addressed the propriety of removing a state criminal prosecution to federal court in *Colorado v. Symes*.  In that case, a federal prohibition agent was charged with murder in state court.  The defendant sought removal on grounds that he was engaged in the discharge of his official duties at the time of the charged conduct.  In his petition for removal, the defendant averred that on the date in question he was investigating an establishment suspected of violating prohibition laws. *See Symes*, 286 U.S. at 516.  While he was "in the act of observing and searching said premises," he saw a man take out a bottle of wine and "look for a drinking glass." *Id.* (internal quotations omitted).  The defendant attempted to arrest the man, but the man resisted arrest and assaulted the defendant. Thereafter, the defendant struck the man in the head with his gun.

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 19

The Supreme Court found that removal was inappropriate because the averments in the defendant's removal petition did not meet the specificity test outlined in *Soper*. The *Symes* Court explained that in the case before it,

> [t]he outstanding fact is that petitioner killed Smith by intentionally striking him on the head with a gun. That is the basis of the state's prosecution. The burden is on the accused to submit a 'candid specific and positive' statement of the facts so that the court will be able to determine the validity of his claim for removal. It is sufficiently shown that in performance of official duties he and another agent went into the place described to observe whether federal law was being violated and that the deceased entered and was about to take a glass of wine from a bottle that he carried in his pocket. These facts led up to the crucial occurrences the principal of which was the death blow. And as to these the statements are not such as would naturally be employed by one desiring fully to portray what happened. For example, it is said petitioner 'proceeded to take possession of said bottle' and to 'arrest * * * Smith' and that thereupon Smith 'did resist arrest' and attempt to destroy the bottle of wine and 'did proceed to assault your petitioner' and did 'attempt to escape' and that Green did attempt to assist deceased to escape and that 'in the scuffle that ensued' and while petitioner was engaged in the discharge of his duties, etc., it became necessary 'in order to subdue * * * Smith for your petitioner to strike' him 'on the head with your petitioner's gun.'
>
> While phrases such as those quoted may appropriately be used to characterize facts that have been disclosed, they are not calculated to give specific information as to the details of the occurrence. The statements of the petition are so vague, indefinite and uncertain as not to commit petitioner in respect of essential details

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 20

of the defense he claims.

*Id.* at 520-21.  Ultimately, the Court in *Symes* held that the
facts presented by the defendant were insufficient to support
removal, and thus "[t]he motion to remand should have been
granted." *Id.* at 521.

Here, as in *Soper* and *Symes*,[8] the evidence that demonstrates

_____

[8]  The removal statute at issue in *Soper* and *Symes* was a
predecessor to Section 1442(a)(1), Judicial Code of 1911, section
33, 36 Stat. 1097, as amended by 39 Stat. 532 (Aug. 23, 1916)
("Section 33").  Section 33 provided, in relevant part, that:

> when any . . . criminal prosecution is commenced
> in any court of a state against any officer
> appointed under or acting by authority of any
> revenue law of the United States now or hereafter
> enacted, or against any person acting under or by
> authority of any such officer, or on account of
> any act done under color of his office or of any
> such law, or on account of any right, title, or
> authority claimed by such officer or other person
> under any such law, . . . the said suit or
> prosecution may at any time before the trial or
> final hearing thereof be removed for trial into
> the District Court next to be holden in the
> district where the same is pending upon the
> petition of such defendant to said District Court
> and in the following manner: Said petition shall
> set forth the nature of the . . . prosecution and
> be verified by affidavit . . . .

Congress later extended the removal statute to cover all federal
officers when it enacted Section 1442(a)(1) as part of the
Judicial Code of 1948.  *See Willingham,* 395 U.S. at 406
(explaining the evolution of the federal officer removal
statute).  While the federal officer removal statute has
therefore broadened in scope since Act 33, the substantive
standard of removal remains the same.  Significantly, one
substantive constant has been that in criminal matters, a
sufficient evidentiary showing must be made to support removal.

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 21

that Clarke is being prosecuted for acts he did under color of

official authority is wanting.

### III.  <u>CONCLUSION</u>

This case presents an uncommon and difficult issue.  At its

core, the parties ask this Court to determine where a significant

local criminal matter must be tried.  The determination is

complicated by the competing sovereign interests that caused this

matter to be removed to this Court in the first instance.  On one

hand, the state has an understandably compelling interest in

prosecuting Clarke, a federal law enforcement agent charged with

murder, in violation of local law.  On the other hand, federal

law provides a vehicle that seeks to avoid any animus that might

exist, or may arise, between local and federal entities in such

cases.  That vehicle -- removal -- allows such matters to be

tried in a court not appointed by the prosecuting sovereign.  The

merits in that approach are equally understandable.

Notwithstanding the tension between federal and local

---

Indeed, while Section 33 required a defendant to set forth facts
supporting removal by means of an affidavit accompanying the
removal petition, today Section 1446(c)(5) contemplates that such
facts will be adduced at an evidentiary hearing. *See* 28 U.S.C. §
1446(c)(5) (providing that if the district court does not order
summary remand of a criminal prosecution, "it shall order an
evidentiary hearing to be held promptly and after such hearing
shall make such disposition of the prosecution as justice shall
require").

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 22

interests, resolution of this issue is facilitated by review of specific evidence presented by Clarke.  Removal would be appropriate if Clarke were to demonstrate that he is being prosecuted for acts undertaken under color of official authority. Surmounting that threshold requirement is where Clarke has stumbled.

The stipulation offered by Clarke in this case shows that, on the morning in question, Duncan was inside her vehicle when Sukow retrieved a large steel flashlight from his vehicle and struck Duncan's vehicle with the flashlight.  Duncan thereafter got into Clarke's vehicle.  Sukow then approached Duncan and Clarke, and hit Clarke's vehicle with the flashlight.  After Sukow hit Clarke's car, Clarke shot Sukow.

As in *Symes,* the facts presented by Clarke in support of removal merely describe the events that led up to the crucial occurrence in this case -- the shooting of Sukow.  However, the evidence presented by Clarke does not give the Court a full picture of what happened on the morning in question.  Indeed, the Court is unable to discern from the evidence in the record whether Clarke shot Sukow because he believed Sukow posed a threat to Clarke or Duncan, or because Clarke was angry that Sukow struck Clarke's vehicle with a flashlight.  In what may be an attempt not to commit himself with respect to the details of

*People of the V.I. v. Clarke*
Criminal No. 2009-09
Memorandum Opinion
Page 23

the case against him, Clarke has presented insufficient evidence

to enable the Court to find that the instant prosecution arises

from acts done by Clarke under color of federal office.  While

the evidence presented by Clarke might satisfy the broad

requirements for removal in civil cases, *see Willingham,* 395 U.S.

at 409, it does not satisfy the more stringent requirements for

removal in criminal cases, *see Symes,* 286 U.S. at 519-21; *Soper,*

270 U.S. at 33-34.[9]

For the reasons given above, the Court will grant the

Government's motion to remand.[10]  An appropriate Order follows.


                              S_____
                                   **CURTIS V. GÓMEZ**
                                    **Chief Judge**


_____

[9]   The Court acknowledges that in both *Soper* and *Symes*, the
Supreme Court remanded the cases with instructions that the
district court judge was at liberty to allow further amendments
to the removal petitions, or other evidence, to enable the
defendants to meet their burdens of showing that removal was
proper.  Here, the Court made repeated efforts to remind Clarke
of his evidentiary burden at the April 1, 2009, hearing.
Notwithstanding those efforts, Clarke chose not to avail himself
of that opportunity.

[10]   Because the Court has found that Clarke has failed to
satisfy the color of office prong of the test for removal under
Section 1442(a)(1), the Court need not reach the issue of whether
Clarke has raised a colorable federal defense.