**FOR PUBLICATION**

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN


|  |  |
|---|---|
| PEOPLE OF THE VIRGIN ISLANDS,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | **Criminal No. 2009-09** |
| ) | re: Super. Ct. Crim. No. F20/09 |
| WILLIAM G. CLARKE,   ) | |
| ) | |
| Defendant.   ) | |


**ATTORNEYS:**

**Renee Gumbs, Esq.**
St. Thomas, U.S.V.I.
    *For the plaintiff,*

**Kerry E. Drue, Esq.**
St. Thomas, U.S.V.I.
    *For the defendant.*


## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is the motion of William G. Clarke ("Clarke") for reconsideration of this Court's June 25, 2009, Order granting the motion of the People of the Virgin Islands (the "Government") to remand the above-captioned matter to the Superior Court of the Virgin Islands, Division of St. Thomas and St. John (the "Superior Court").

## I. **FACTS**

On the morning of September 7, 2008, Defendant William G.
Clarke ("Clarke"), a special agent with the Bureau of Alcohol,
Tobacco, Firearms and Explosives, witnessed a dispute between
Marcus Sukow ("Sukow") and Marguerite Duncan ("Duncan") outside
of Clarke's condominium at the Mahogany Run Condominium complex,
in St. Thomas, U.S. Virgin Islands. Clarke eventually intervened
in the dispute and shot and killed Sukow. It is undisputed that
Clarke was not working at the time of the shooting.

On January 13, 2009, the Government filed a four-count
information against Clarke in the Superior Court. Count One of
the information charges Clarke with second degree murder, in
violation of title 14, sections 921 and 922 of the Virgin Islands
Code ("Section 921" and "Section 922"). Count Two charges Clarke
with using a dangerous weapon during the commission of a second
degree murder, in violation of title 14, section 2251(a)(2)(B) of
the Virgin Islands Code ("Section 2251(a)(2)(B)"). Count Three
charges Clarke with committing voluntary manslaughter, in
violation of title 14, section 924 of the Virgin Islands Code
("Section 924"). Count Four charges Clarke with using a
dangerous weapon during the commission of a voluntary
manslaughter, in violation of Section 2251(a)(2)(B).

On January 15, 2009, Clarke was arraigned on the charges in the information in the Superior Court.

On February 13, 2009, Clarke filed a notice of removal of the matter to this Court, pursuant to 28 U.S.C. § 1442(a)(1) ("Section 1442(a)(1)").  On March 13, 2009, the Government filed an opposition to the notice of removal, along with a motion to remand the matter to the Superior Court.  An evidentiary hearing on the motion to remand was conducted on April 1, 2009.

On June 25, 2009, the Court granted the Government's motion to remand after determining that Clarke had failed to meet his burden of proving that removal was appropriate.

Clarke timely filed a motion for reconsideration of the June 25, 2009, Order.  A hearing on the motion for reconsideration was conducted on August 20, 2009.

## II.  <u>ANALYSIS</u>

Local Rule of Civil Procedure 7.3 ("Local Rule 7.3") provides:

> A party may file a motion asking the court to reconsider its order or decision. . . .  A motion to reconsider shall be based on:
>
> 1. Intervening change in controlling law;
>
> 2. Availability of new evidence, or;
>
> 3.  The need to correct clear error or prevent manifest injustice

LRCi 7.3 (2008).  The purpose of a motion for reconsideration "is

to correct manifest errors of law or fact or to present newly

discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906,

909 (3d Cir. 1985).  Such motions are not substitutes for

appeals, and are not to be used as "a vehicle for registering

disagreement with the court's initial decision, for rearguing

matters already addressed by the court, or for raising arguments

that could have been raised before but were not." *Bostic v. AT&T

of the V.I.*, 312 F. Supp. 2d 731, 733 (D.V.I. 2004).

Here, Clarke argues that reconsideration is appropriate in

order to correct clear error or prevent manifest injustice.

Clarke identifies several reasons why, in his view, the Court

erred by granting the motion to remand.

**A.   Relevant Case Law**

Clarke argues that the Court erred by failing to consider

relevant case law in addressing whether Clarke was acting under

color of federal office when he shot Sukow.  As support for this

argument, Clarke points to *United States v. Hoy,* 137 F.3d 726 (2d

Cir. 1998) and *United States v. Reid,* 517 F.2d 953 (2d Cir.

1975), among other cases.  Clarke asserts that, because those

cases were not mentioned in the Court's June 25, 2009, Memorandum

Opinion, the Court failed to consider them.  The merits of that

argument are so illusory that little ink is required to address

it.  The fact that certain cases submitted by Clarke were not cited in the Court's opinion does not mean that the Court did not consider those cases.  Indeed, pushed to its logical extreme, that suggestion would mean that unless a court referred to every item in the docket prior to disposing of a case, the court did not consider all matters prior to disposition.  The Court undertook its obligations in a manner consistent with the law, which requires consideration of all relevant materials.

Moreover, none of the cases Clarke cites address the issue of whether a defendant was acting under color of federal office for purposes of removal under Section 1442(a)(1).  The cases relied on by Clarke stand for the proposition that, in a variety of contexts, a federal officer may be considered to be acting in accordance with his official authority even though he is not technically on duty at the time of the conduct in question. Nothing in the Court's June 25, 2009, Opinion is inconsistent with that proposition.  Indeed, the Court recognized that ATF policies permit special agents to intervene if they witness an exigent state offense while not on their tour of duty. The Court also left open the possibility that Clarke could have been acting under color of federal office if his conduct fell within the scope of those policies.  The Court held, however, that the facts presented by Clarke in this case were insufficient to show that

Clarke was in fact acting within the scope of those ATF policies

when he shot Sukow.  None of the cases cited by Clarke suggest

otherwise.

**B.    Legal Standard for Removal**

Clarke next argues that the Court erred by applying a more

rigorous standard for removal in the criminal context than would

be appropriate in the civil context.  He claims that the Court

inappropriately relied on dicta in footnote four of *Willingham v.*

*Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 1817, 23 L.Ed.2d 396 (1969)

in arriving at that holding.  However, the Court's ruling was not

based on any statement in *Willingham.*  Rather, it was based on

the principle outlined in *Maryland v. Soper,* (No. 1), 270 U.S. 9,

46 S.Ct. 185, 189, 70 L.Ed. 449 (1926), and  *Colorado v. Symes*,

286 U.S. 510, 52 S.Ct. 635, 76 L. Ed. 1253 (1932) that a criminal

defendant must present sufficient facts in support of removal to

enable the Court to determine whether the charged conduct arises

from acts done under color of federal office.

Clarke points out that in the subsequent criminal removal

case of *Mesa v. California*, 489 U.S. 121, 109 S.Ct. 959, 103

L.Ed.2d 99 (1989), the Supreme Court did not mention the

statement in *Willingham* that, "[w]ere this a criminal case, a

more detailed showing might be necessary because of the more

compelling interest in conducting criminal trials in the state

courts." *Willingham*, 395 U.S. at 409 n.4. However, that fact is of little consequence because *Mesa* did not address the issue of the factual showing required to establish that the charged conduct was done under color of federal office. Rather, *Mesa* focused on the legal issue of whether a defendant must raise a colorable federal defense in order to be entitled to removal under Section 1442(a).

Clarke also calls the Court's attention to the decision of the United State Court of Appeals for the Third Circuit in *Commonwealth of Pa. v. Newcomer,* 618 F.2d 246 (3d Cir. 1980). In Clarke's view, that case is significant because it involved removal of a criminal prosecution, yet the Third Circuit did not mention footnote four of *Willingham*. However, the facts of *Newcomer* were very different from the facts at issue in this case.

In that case, the defendant, a truck driver for the United States Postal Service, struck and killed a pedestrian while he was driving on his mail route. The defendant was charged by the state with vehicular homicide. Thereafter, he removed the case to district court. Based on those facts, the Third Circuit held that

> the defendant has satisfactorily demonstrated in
> his petition and the accompanying papers, the
> necessary causal connection in this case between

> his federal authority to drive a postal truck and
> the acts involved in the accident which are the
> basis for the instant prosecution, acts which
> occurred while he was acting as an employee of
> the postal service, while driving a postal truck,
> within the scope of his office.

*Id.* at 250. Thus, in *Newcomer*, there was no question as to

whether the defendant was acting pursuant to his federal

authority when he committed the acts in question, as he was on

duty, driving his postal vehicle at the time of the accident.

Thus, there was no reason for the *Newcomer* court to address the

level of specificity required for a defendant to show that he was

acting within the scope of his federal authority.

In the face of clear Supreme Court precedent laying out the

legal standard with respect to the degree of specificity required

to show that a criminal defendant is entitled to removal, the

Court is reluctant to rely on cases that do not articulate that

standard. Accordingly, Clarke's argument that *Willingham*, *Mesa,*

and *Newcomer* undermine the validity of the standard outlined in

*Soper* and *Symes* must fail.

**C.  *Soper* and *Symes***

Clarke contends that the Court erred by relying on *Soper* and

*Symes* in ruling that a criminal defendant seeking removal must

present facts sufficient to enable the Court to determine whether

he was acting under color of federal office when he committed the acts in question.

In Clarke's view, the Supreme Court in *Mesa* expressly limited the standard outlined in *Soper* to cases in which the defendant pleaded by traverse while seeking removal. However, the Court in *Mesa* did no such thing. Rather, the *Mesa* Court's discussion of *Soper* was in response to the Government's argument that *Soper* did away with the requirement that a defendant assert a colorable federal defense in order to be entitled to removal. Indeed, the Court in *Mesa* stated: "Unlike the Government, we do not understand the causal connection test of *Soper (No. 1)* to have eliminated the general requirement that federal officer removal be predicated on the existence of a federal defense." *Mesa,* 489 U.S. at 132. The *Mesa* Court also noted that "*Soper (No. 1)* presented a unique criminal prosecution . . . where a federal officer pleaded by traverse and sought removal," and that "the decision assumed that a situation could arise in which a petition that pleaded by traverse might warrant removal." *Id.* The Court in *Mesa* expressly declined to decide whether a defendant who pleaded by traverse could be entitled to removal. Thus, the purpose of the discussion of *Soper* in *Mesa* was to reject the government's contention that a defendant need not articulate a colorable federal defense to be entitled to removal.

That discussion did not touch upon the aspect of *Soper* dealing

with the sufficiency of the facts presented in support of

removal.

Clarke further argues that this Court erred in relying on

*Soper* and *Symes* because the version of the federal officer

removal statute in effect when those cases were decided was

different than the version in effect today.  As Clarke correctly

points out, the version of the statute in effect at the time of

*Soper* and *Symes* required the defendant's removal petition to "set

forth the nature of the . . . prosecution and be verified by

affidavit," Judicial Code of 1911, section 33, 36 Stat. 1097, as

amended by 39 Stat. 532 (Aug. 23, 1916) ("Section 33"), whereas

the current version of the statute contains no such requirement.

Contrary to Clarke's contention, however, the amendments to the

removal statute did not do away with the requirement that the

defendant present a sufficient evidentiary basis in support of

his removal petition.  Rather, Congress simply altered the means

for presenting such evidence.  Indeed, as the Court explained in

its June 25, 2008, Opinion, "today [28 U.S.C. §] 1446(c)(5)

contemplates that such facts will be adduced at an evidentiary

hearing." (Mem. Op. 21 n.8, June 25, 2009.); *see also* 28 U.S.C. §

1446(c)(5) (providing that if the district court does not order

summary remand of a criminal prosecution, "it shall order an

evidentiary hearing to be held promptly and after such hearing

shall make such disposition of the prosecution as justice shall

require"). Thus, while the statute has evolved in some respects,

the requirement that a sufficient evidentiary showing must be

made to support removal has not been eliminated.

**D.    Legislative History of 28 U.S.C. § 1446**

Clarke next argues that when Congress amended 28 U.S.C.

§ 1446 ("Section 1446") in 1988, it did so with the intention of

conforming Section 1446 to the pleading standards outlined in

Federal Rule of Civil Procedure 8(a)(1). By that argument,

Clarke invites the Court to engage in a debate regarding the

statute's legislative history. However, legislative history is

only relevant to the extent a statute is unclear. *See In re*

*Harvard Industries, Inc.,* 568 F.3d 444, 451 (3d Cir. 2009) ("[W]e

rely on the legislative history only where the text itself is

ambiguous."). Because the text of Section 1446 clearly requires

that an evidentiary hearing be conducted in a criminal removal

case, the Court declines Clarke's invitation to delve into the

statute's legislative history.

**E.    Focus of the Court's Inquiry**

Clarke urges that the Court erred by focusing on the wrong

factual issue in conducting the color of office analysis. More

specifically, Clarke asserts that the following passage

demonstrates that the Court inappropriately focused on whether

Clarke was justified in using deadly force, instead of focusing

on whether he was acting under color of federal office:

> the facts presented by Clarke in support of
> removal merely describe the events that led up to
> the crucial occurrence in this case -- the
> shooting of Sukow. However, the evidence
> presented by Clarke does not give the Court a
> full picture of what happened on the morning in
> question. Indeed, the Court is unable to discern
> from the evidence in the record whether Clarke
> shot Sukow because he believed Sukow posed a
> threat to Clarke or Duncan, or because Clarke was
> angry that Sukow struck Clarke's vehicle with a
> flashlight.

(Mem. Op. 22, June 25, 2009.)  Contrary to Clarke's assertion,

the Court made no attempt to determine whether Clarke's actions

were ultimately justified.  Rather, the above-quoted passage

inquires into Clarke's motives for shooting Sukow in order to

assess whether the shooting occurred because Clarke was

responding to an exigent state offense, and therefore was acting

within the scope of ATF policies when he shot Sukow.  Clarke

claims that such inquiry was unnecessary in the analysis of

whether Clarke was acting under color of federal office when he

shot Sukow.  Pushed to its logical extreme, Clarke's argument in

this respect suggests that everything a federal officer does

should be considered to be done under color of federal office.

Were that the standard, the "color of . . . office" language in

Section 1442(a)(1) would be rendered meaningless.

**F.    Consideration of Evidence**

Clarke asserts that the Court unjustifiably rejected
Clarke's offer to present additional evidence supporting removal
at the April 1, 209, hearing, and that it should consider
additional evidence at this stage of the proceedings.  In support
of his argument that the Court refused to let him put on evidence
at the April 1, 2009, hearing, Clarke refers to an off-the-record
discussion that took place at the conclusion of the hearing.  In
his motion for reconsideration, Clarke states that during such
discussion,

> Clark proffered that he was prepared to present
> testimony of a witness who conducted a
> comprehensive investigation of the events of
> September 7, 2008 on behalf of ATF, which would
> have provided a fuller picture of how SA Clark's
> decision to intervene to protect Ms. Duncan from
> the violence of Mr. Sukow was pursuant to his
> authority as a federal law enforcement officer.
> The witness would have also presented ATF's
> position that SA Clark acted in compliance with
> the established policies of the United States
> Department of Justice.  But the Court, in
> unrecorded comments, did not permit SA Clark to
> present such testimony.

(Mot. for Reconsideration 4, July 8, 2009.)

Additionally, during the August 20, 2009, hearing, Clarke
reiterated his position that the Court precluded him from
presenting evidence at the April 1, 2009, hearing.  In fact, the
Court questioned Clarke's attorney at least three times regarding

their position on this issue.  Each time, the attorney reiterated

his view that the Court prevented Clarke from presenting relevant

evidence at the April 1, 2009, hearing.

However, the transcript of the April 1, 2009, hearing,

together with a verbatim transcription of the discussion to which

Clarke refers (attached hereto as Appendix A), reveals nothing

about what is suggested by Clarke.  At the conclusion of the

April 1, 2009, hearing, while still on the record, Clarke's

attorney, Adam Hoffinger, Esquire, engaged in the following

exchange with the Court:

> MR. HOFFINGER: Your Honor, . . . we're prepared
> to supplement the record –
>
> THE COURT: All right. How would you like to do
> that?
>
> MR. HOFFINGER: -- with an additional submission.
>
> What I would like to do, with the Court's
> permission, I think, is submit an affidavit.  And
> I think Your Honor may understand. I'll be frank
> with the Court.  My client is here today. <u>I don't
> want to put my client on the witness stand to
> establish, you know, if I don't have to</u>. . . .
>
> But I would prefer, since we have proceeded
> before by affidavit, to give Your Honor an
> affidavit . . . .
>
>                          . . .
>
> So with the Court's permission, if you give
> me a short deadline, I will give you an
> affidavit, or series of affidavits, that will --
> that I think will answer your, Your Honor's
> question and complete the record on this issue of

> whether it was, you know, just a mild agreement,
> a disagreement, or whether it was -- there was
> some threat of violence.
>
> THE COURT: <u>All right</u>.
>
> What's the government's position on how we
> should proceed?
>
> Is there -- do you want to continue
> presenting evidence, Attorney Hoffinger?
>
> Is there no one else that you can call
> besides your client, who can present that
> evidence before the Court?
>
> . . .
>
> MR. HOFFINGER: I think we can put on a witness,
> Your Honor. But I have to ask the Court's
> indulgence. Could we take a short break so that
> we can prepare that witness and to make sure all
> this is ready-

(Hr'g Tr. 89-91, April 1, 2009.)

As revealed in the above quotation, Clarke made clear that

he did not wish to present a witness. Rather, he indicated that

he preferred to present testimony by way of affidavit. The Court

did not preclude that approach. Clarke also made clear that he

wanted to avoid taking the stand to testify on his own behalf.

The Court inquired whether the parties could call another witness

who could present testimony regarding the events that occurred on

September 7, 2008. Because of Clarke's apparent uncertainty on

what evidence to present, or how to present it, the Court then

called the parties aside and engaged in the following discussion

at sidebar, which was not part of the proceedings in open court.

> THE COURT: All right. What is it that you want
> to do, Attorney Hoffinger?
>
> MR. HOFFINGER: If Your Honor gives us ten
> minutes, we'll have a witness on the stand.
>
> THE COURT: Okay.
>
> . . .
>
> THE COURT: What do you want to put on?
>
> MR. HOFFINGER: Well, we think it's going to be a
> supervisory ATF agent that will be able to
> testify about, about what the report say, about
> the violence.
>
> [PROSECUTOR]: Your Honor, we object to that --
>
> THE COURT: Hold on. We're not on the record. I'm
> just trying to -- it's just a procedural --
>
> . . .
>
> THE COURT: -- status matter here.
>
> Are there other, any other witnesses? I
> mean, because it seems we're talking about a
> specific factual incident and whether or not --
>
> . . .
>
> THE COURT: -- it sounds like your -- the question
> is on the continuum. . . .
>
> Where on the continuum is this? And it
> sounds like you're suggesting you're going to put
> on someone who didn't witness this.
>
> MR. HOFFINGER: It would be hearsay testimony Your
> Honor, I agree.

Now, Your Honor --

THE COURT: Okay.

MR. HOFFINGER: . . . . If Your Honor wants
firsthand, firsthand witness -- firsthand
evidence --

THE COURT: <u>Well, I'm not going to tell you how to
put it on because there are any number of hearsay
exceptions that may or may not be applicable</u>. I
have no idea who or what it is that you would put
on, but it seems to me if you're trying to inform
the Court on where on the continuum something
falls, and your intention is to put on someone
who was not there, you know, I don't know if
that's going to necessarily be helpful. It may
be, but I don't know.

MS. DRUE: Is Your Honor objecting to --

THE COURT: I'm not objecting. I'm just saying
that there's a hearing that it seems the statute
requires and the hearing, I suspect, is one that
would allow each side to cross examine, or at
least question the evidence that's proffered. An
affidavit, unless this system is drawn out, it
would be a battle of affidavits when we have the
hearing right here and now.

(Sidebar Tr. 3-5, April 1, 2009.)

As the above quotations make clear, the Court did not deny

any request by Clarke to put on evidence. To the contrary, the

Court explicitly declined to instruct Clarke as to how to put on

his case. Indeed, the Court offered that any number of hearsay

exceptions might allow hearsay testimony. Thus, Clarke's

assertion that the Court unjustifiably refused to allow Clarke to

present evidence at the April 1, 2009, hearing is wholly without

merit.

Moreover, during the remainder of the sidebar discussion the

Court gave the parties every opportunity to supplement the record

with whatever evidence they wished to present. Attorney

Hoffinger expressed concern that, if he were to call a witness,

it might result in a mini-trial. The Court assured Attorney

Hoffinger that it does not conduct mini-trials, and then engaged

in the following exchange with Attorney Hoffinger:

> THE COURT: -- you know, it seems to me if this is
> a thing that you're trying to inform and place on
> the record where on the continuum something
> falls, it seems it would be useful to put on
> something that can be presented without
> objection. And maybe, you know, there's some way
> that can be done with the person that
> you are contemplating. I don't know.
>
> MR. HOFFINGER: May I -- let me –
>
> THE COURT: Let me, let me also put this out for
> the parties and, you know, again, the hearing is
> only required if, when -- where the Court
> considers evidence if there is a disagreement, a
> dispute on material facts.
>
> Now it seems that, I think, that both
> parties agree that it seems that this would be a
> material consideration for the Court.
>
> Is there a dispute on what happened? Can --
> is there any way that that can just be placed on
> the record? Or is there some dispute?

(*Id.* at 5-6.)

The Court then attempted to ascertain what facts, if any,

the parties agreed on.   The Court asked the parties:

> THE COURT: -- is there a report that sort of
> outlines what happened that we can go through,
> and maybe the parties can agree on certain
> points?

(*Id.* at 8.)   The parties began referring to different documents

and speaking simultaneously.   The Court interjected:

> THE COURT: No, my question is, you know, whatever
> happened on the day in question, is there some
> document –
>
>                          . . .
>
> THE COURT: -- that both parties would say "this
> outlines what happened and we have no dispute on
> this."

(Id. at 8-9.)

The parties were unable to come to a consensus as to an

existing document which they could agree was an accurate

representation of the events in question.   The Court then stated:

> THE COURT: All right. Well, let me, let me
> suggest this: I think there's a way to resolve
> this.
>
> At least, there are certain things I think
> that you can agree on, you know.

(*Id.* at 9.)   The Court then continued its inquiry to determine

whether there were any facts on which the parties agreed.

Thereafter, Attorney Hoffinger stated:

> MR. HOFFINGER: We'll try to work -- that's -- and
> that's what I, by the way -- I wasn't -- when I

>                    asked for stipulation.  I apologize for doing
>                    that on the record.  I was sort of just inviting
>                    the possibility of us trying to work this out.

(*Id.* at 10.)

To that end, Attorney Hoffinger suggested that the parties

might rely on the Government's brief.  That suggestion provoked a

dispute between the parties.  Nonetheless, in light of Attorney

Hoffinger's efforts to obtain a stipulation and his efforts to

"work this out," the Court then stated:

>                    THE COURT: All right.  I mean, we're talking
>                    about the potential of a stipulation here –
>
>                    MR. HOFFINGER: Yeah.
>
>                    THE COURT: -- I presume –
>
>                    MR. HOFFINGER: <u>That's what I was talking about</u>.
>
>                    THE COURT: -- so if that's the case -- yes.
>
>                    MR. HOFFINGER: Thank you.
>
>                    THE COURT: All right.  Well, I don't need to be
>                    involved in that.  I think you all can, I think
>                    you get the idea.  <u>And it's up to the parties.</u>
>                    <u>I can't impose a stipulation</u>. . . .

(*Id.* at 11.)  The parties then took a long recess, after which

they returned with a single-paragraph stipulation.  That

stipulation formed the basis for the facts relied upon in the

Court's June 25, 2009, Opinion.  Significantly, at no time was

Clarke precluded by this Court from presenting evidence.  Indeed,

to the extent Clarke did not present testimony, whether live or by way of affidavit, that was a decision of his own choosing.

Finally, Clarke contends that the Court should consider additional evidence, which he has submitted in conjunction with his motion for reconsideration. Specifically, Clarke has submitted a declaration, in which he describes in detail the events that occurred on September 7, 2008, from his own perspective. Clarke has also submitted declarations of Alexander Rankin ("Rankin") and his wife, Martha Hale ("Hale"), who were eyewitnesses to the events in question. However, to the extent Clarke attempts to rely on these new declarations in support of his removal petition, such reliance is misplaced.

While Local Rule 7.3 does not define the term, the United States Court of Appeals for the Third Circuit has characterized newly available evidence as "evidence known but unavailable." *See United States v. Jasin*, 280 F.3d 355, 362-63 (3d Cir. 2002) (holding that "'newly available evidence' is not synonymous with 'newly discovered evidence'" because the former term encompasses evidence of which the party was previously aware). The term "available" means "readily obtainable; accessible." Random House Dictionary of the English Language 102 (Unabridged ed. 1973).

Here, Clarke fails to show how the evidence contained in the declarations attached to his motion for reconsideration was

previously known but not available.  In fact, the Court notes

that Clarke was present at the April 1, 2009, hearing, but simply

declined to testify on his own behalf.  Additionally, Clarke was

provided with the statement Rankin made to the police well before

the April 1, 2009, hearing.  While Clarke did not receive any

discovery referring to Hale by name, Rankin's statement made

numerous references to his wife.  Indeed, Rankin stated that his

wife was in Rankin's apartment with Rankin at the time of the

shooting.  Rankin also stated that it was his wife who called 911

after the shooting.  Furthermore, Rankin's statement included his

name, address, phone number, and place of employment, such that

Clarke could have easily contacted Rankin to inquire about his

wife's knowledge of the events that transpired on September 7,

2008.  Under these circumstances, the Court finds that the

testimony of Clarke, Rankin and Hale was accessible to Clarke

prior to the April 1, 2009, hearing.  As such, the proffered

declarations cannot be considered to be newly available evidence

within the meaning of Rule 7.3.

It is well-settled that a motion for reconsideration cannot

be used to introduce for the first time evidence that was

previously available, thus giving the party seeking to present

such evidence a second bite at the apple. *See Prusky v.

Prudential Ins. Co. of Am.,* 44 Fed. Appx. 545, 548 n.1 (3d Cir.

Aug. 1, 2002) (explaining that the purpose of a reconsideration
motion "is not to allow a party to simply change[ ] theories and
[try] again, thus giving them a second bite at the apple"
(quotation omitted)) (unpublished); *Mincey v. Head*, 206 F.3d
1106, 1137 n.69 (11th Cir. 2000) ("The function of a motion to
alter or amend a judgment is not to serve as a vehicle to
relitigate old matters or present the case under a new legal
theory . . . [or] to give the moving party another 'bite at the
apple' by permitting the arguing of issues and procedures that
could and should have been raised prior to judgment."); *see also,
e.g., Publishers Resource, Inc. v. Walker-Davis Publications,
Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (affirming the denial of
a reconsideration motion because "all of the evidence on which
[the defendant's] new arguments rest was available to it at the
time it responded to plaintiff's summary judgment motion and [the
defendant] was obligated to make these arguments at that time").

The Court recognizes that, after finding that the facts in
*Soper* and *Symes* were insufficient to support removal, the Supreme
Court left open the possibility that the trial judges in those
cases may find it appropriate to allow the presentation of
additional evidence to support removal. *See Soper,* 270 U.S. at 36
(stating that, "[s]hould the District Judge deem it proper to
allow another amendment to the petition for removal, by which the

averments necessary to bring the case within section 33 are

supplied, he will be at liberty to do so"); *Symes*, 286 U.S. at

521 (noting that "[t]he district judge, should he deem it proper

so to do, may permit the accused by amendment to his petition and

additional evidence or otherwise to show that he is entitled to

removal authorized by section 33").  The Court finds that Rule

7.3 and the relevant jurisprudence on reconsideration motions

provide the appropriate standard for consideration of new

evidence after a matter has been decided.  Indeed, to consider

previously available evidence after the issuance of the ruling in

question would undermine the judicial system by giving the

parties a roadmap of the Court's reasoning and then allowing them

to tailor their arguments accordingly.

Accordingly, because Clarke fails to demonstrate that the

evidence submitted in connection with his motion for

reconsideration is newly available, the Court finds it

inappropriate to consider such evidence at this stage in the

proceedings.

### III.  <u>CONCLUSION</u>

Understandably, this case evinces strong and diametrically

opposed positions.  On the one hand, the Government seeks to

embrace the well-established position that states have a

"compelling interest in conducting criminal trials in

the state courts." *Willingham*, 395 U.S. at 409 n.4.  The

prosecution of this case is just such a matter.  On the other

hand, Clarke espouses the well-established legal position that

"the policy favoring removal 'should not be frustrated by a

narrow, grudging interpretation of [Section] 1442(a)(1).'"

*Arizona v. Manypenny,* 451 U.S. 232, 242, 101 S.Ct. 1657, 68

L.Ed.2d 58 (1981) (quoting *Willingham*, 395 U.S. at 409).  This

case presents an intersection of these seemingly disharmonious

positions.  That discord is easily dispelled, however.

Indeed, the statutory framework and relevant case law

indicate that those two positions address different

circumstances.  The difficulty that Clarke has is that he seems

to perceive that his status as a law enforcement officer

transcends all situations, including the legal evidentiary

requirements to avoid remand.  It does not.  That is precisely

why a hearing is required to determine the circumstances

surrounding, and the nature of, his conduct.  For whatever

reason, Clarke was reluctant to present evidence at his hearing,

notwithstanding the Court's repeated invitations.  It is unclear

whether a transcendent view of law enforcement officer status

informed his position.  What is quite clear, however, is that

Clarke utterly failed to carry his burden to avoid remand.

The reconsideration that Clarke now urges is problematic for several reasons. First, Clarke has failed to demonstrate clear error, newly available evidence, or an intervening change in controlling law. Indeed, the authority cited by Clarke offers little or no support for his position. Rather, Clarke merely recites authority previously considered by the Court.

Clarke's arguments similarly want for legal relevance. Indeed, in the absence of any clear authority, Clarke remarkably has declared that Supreme Court precedent that specifically addresses removal has been overturned. That approach confounds logic, particularly because a decision of the Supreme Court remains the law of the land until the Court chooses to overturn it. *See United States v. Ordaz*, 398 F.3d 236, 241 (3d Cir. 2005) (explaining that Supreme Court decisions are binding until overturned). Furthermore, the Supreme Court "does not normally overturn, or . . . dramatically limit, earlier authority *sub silentio*." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 18, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000). Rather, "a break [in the rule of law] has been recognized only when a [Supreme Court] decision explicitly overrules a past precedent of [the] Court." *United States v. Johnson,* 457 U.S. 537, 551, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). There has been no such

explicit overruling of the Supreme Court decisions with which Clarke takes issue.

Finally, given the record in this matter, Clarke's claims that he was precluded from presenting evidence and that he has newly available evidence, not only lack support in the record, but they also seem to fall in line with an effort to rewrite history to one's advantage. Just as a Monday morning quarterback calling plays after a game cannot change the outcome of the game, Clarke's position cannot now be improved. While post hoc amendments may be permitted in certain circumstances, Clarke has not met his burden for such dispensation. In sum, he has presented insufficient support to elevate his position above that of a Monday morning quarterback.

As the opportunity for review is limited, *see* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . ."); *Feidt v. Owens Corning Fiberglas Corp.,* 153 F.3d 124 (3d Cir. 1998) (holding that an order remanding a case that had been removed under Section 1442(a)(1) was not appealable), the Court does not reach this decision lightly. Nonetheless, because Clarke has failed to show that reconsideration is warranted to

correct clear error, prevent manifest injustice,[1] or in light of

newly available evidence, the Court will deny Clarke's motion.

An appropriate Order follows.

S\_____
                    **Curtis V. Gómez**
                    **Chief Judge**

_____

[1]  In the context of a motion to reconsider, manifest injustice "[g]enerally, [] means that the Court overlooked some dispositive factual or legal matter that was presented to it." *In re Rose*, No. 06-1818, 2007 U.S. Dist. LEXIS 64622, at *3 (D.N.J. Aug. 30, 2007) (unpublished).  Manifest injustice has also been defined as "'an error in the trial court that is direct, obvious, and observable.'" *Tenn. Prot. & Advocacy, Inc. v. Wells*, 371 F.3d 342, 348 (6th Cir. 2004) (quoting Black's Law Dictionary 974 (7th ed. 1999)).  "[M]ost cases . . . use the term 'manifest injustice' to describe the result of a plain error." *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1425 (5th Cir. 1996).